UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANCEL L. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-238 |
| | § | |
| FLINT HILLS RESOURCES LP, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING SUMMARY JUDGMENT

Before the Court is the Defendant's Motion for Summary Judgment (D.E. 19). For the reasons set out below, the Motion is GRANTED.

## JURISDICTION

This action seeks damages for age and disability employment discrimination pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-213. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

## FACTS

**A. Injuries and Temporary Accommodations.**

Plaintiff, Ancel L. Williams (Williams), was employed by Defendant, Flint Hills Resources, L.P. (FHR), as a Process Specialist.[1] The essential functions of a Process Specialist include continuous climbing, frequent bending and kneeling, and lifting objects

---

[1] Technically, Production Specialist Process (PSP), Level 1.

up to 50 pounds. In the course of his work, on January 3, 2010, Williams sustained an injury to his left knee. After seeking and obtaining medical attention, his doctor released him to return to work with restrictions: no kneeling/squatting, bending/stooping, climbing stairs/ladders, or carrying more than 20 pounds.

The restrictions prevented Williams from doing his work as a Process Specialist, so FHR reassigned him to a light duty job filing and auditing safety permits. This job was a temporary position ordinarily staffed by a contract worker. During this time, he continued to be paid wages and benefits at the higher rate applicable to his Process Specialist position.

On May 6, 2010, with medical clearance to perform all of his essential job functions except climbing ladders, Williams returned to his former Process Specialist job. On May 9, 2010, Williams re-injured his left knee while walking. This happened at the end of a seven-day work shift after which Williams had seven days off. At the conclusion of that time off, Williams returned to FHR with the same work restrictions that had been imposed initially and was again put on light duty processing permits in a temporary capacity.

B. Permanent Disability and Attempted Accommodations.

On June 21, 2010, Williams' doctor certified that Williams' knee injury was permanent in nature, preventing him from returning to his Processing Specialist job. There is no dispute that Williams' disability is permanent.

On June 23, 2010, FHR's Production Leader Danny Estes, Williams' immediate supervisor and Reliability Center Manager Rodney Dillon met with Williams to gather

information on Williams' medical status and physical restrictions. On June 28, 2010, Williams met with Dillon, Petrochemical Manager Bill Shelton, and Human Resources Director Stace Gordon to discuss FHR's continuing efforts to assess the issues and arrive at alternatives for Williams' employment.

After researching open positions for jobs that were consistent with Williams' qualifications and physical limitations, on July 19, 2010, Gordon, Dillon, and Estes met with Williams again to discuss reassignment of Williams to another full time permanent job. Estes and Dillon provided Williams with a current printout of job vacancies and, after discussion, arrived at the consensus that Williams was not a candidate for any of the openings because of his physical disability, which could not be accommodated consistent with the job's essential functions or because he did not have the right qualifications. Consequently, FHR placed Williams on an indefinite medical leave of absence on July 21, 2010.

FHR provided Williams with website information that he could consult for job openings at FHR and its parent company, Koch Industries. FHR invited Williams to monitor that website and apply for any openings that he found that were consistent with his qualifications and medical restrictions. Thereafter, FHR contends that Estes continued to try to find a workable position for Williams but that Williams did not call in. Williams contends that he called in but no one would return his calls. He finally applied for a position that he could not assume, hoping to get the attention of FHR. Regardless, there is no evidence that any job openings became available for which Williams was qualified and of which Williams was capable of performing the essential functions.

Williams continued to be paid by way of his accrued sick leave and annual leave benefits until those benefits were completely depleted. While FHR maintains that Williams remains "employed" but on medical leave at FHR, Williams, who is 57 years of age, does not work at the FHR facilities and FHR is no longer paying him any wages or benefits. Williams' former Process Specialist job responsibilities were absorbed by other Process Specialists and thus Williams was not replaced.

### C. FHR's Treatment of Comparators.

The parties refer to another Process Specialist, Clint Williamson (CW)[2], who was thirty-two (32) years old and employed by FHR. Shortly before Williams' injury, CW injured the tendon in his hand and was released to work with restrictions including a restriction against climbing. Before Williams was reassigned, CW was reassigned to light duty work as a lock-out tag-out coordinator (LOTO). This was a temporary position associated with plant turnarounds. The LOTO position had the benefit of including overtime. CW held that temporary position for over a year through multiple turnarounds. After his hand healed, CW returned to his Process Specialist position.

FHR also presented the case of John Doe, a Process Specialist in Williams' former unit. John Doe was aged fifty-four (54) years when he suffered a heart attack and underwent bypass surgery. After several months of recovery and treatment, John Doe returned to work at FHR in his Process Specialist position.

---

[2] To avoid confusion between the names "Williams" and "Williamson," the Court refers to the latter by his initials.

## DISCUSSION

### A. The Disability Claims.

Williams alleges that he was intentionally discriminated against under the ADA because FHR removed him from his position, failed to reasonably accommodate his disability, and terminated him. D.E. 1, p. 4 (Count Two). Alternatively, he contends that FHR removed him from his position and terminated him pursuant to a perceived disability. *Id*. FHR filed its Motion for Summary Judgment claiming that FHR engaged in a good faith effort to accommodate Williams and did, in fact, reasonably accommodate him. With respect to the discrimination claim, FHR claims that Williams did not suffer an adverse employment action, that he was not treated less favorably than others, and that FHR had legitimate, non-discriminatory reasons for its actions that were not pretextual.

#### 1. Failure to Accommodate.

In his temporary light duty assignments, Williams was able to work within his medical restrictions and receive his full salary. Any complaint that he should have been placed in a better position with overtime potential is unsupported by any evidence or argument that such a position was or should have been available or that he, rather than CW, should have been placed in that position. The Court concludes that the failure to accommodate complaint cannot be directed to the temporary placements.

Instead, Williams' claim goes to the effort required of FHR once Williams' disability was certified as permanent. The parties are in agreement as to the elements of proof necessary to demonstrate a failure to accommodate claim. A plaintiff must show: (1) he is a qualified individual with a disability; (2) the employer was aware of his

disability; and (3) the employer failed to reasonably accommodate the disability. *Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514, 524 (N.D. Tex. 2009). The third element, which is the only one in dispute, requires proof regarding the ADA's requirement that "the employer and employee engage in an interactive process to determine a reasonable accommodation." *Id*. A violation occurs when the employer's failure to engage in a good faith interactive process leads to a failure to reasonably accommodate the employee. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). In *Loulseged*, the Fifth Circuit noted:

> Employers cannot be expected to anticipate all the problems that a disability may create on the job and spontaneously accommodate them. *See Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999) ("Only [the employee] could accurately identify the need for accommodations specific to her job and workplace."); *Schmidt v. Safeway, Inc.*, 864 F. Supp. 991, 997 (D.Or. 1994) (employee cannot "expect the employer to read his mind and know he secretly wanted a particular accommodation"). Accordingly, the burden is on the employee to request an accommodation. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164-65 (5th Cir.), *cert. denied*, 519 U.S. 1029, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996).

*Id*. at 736 n.4.

There is a dispute between the parties as to whether the process was interactive or approached in good faith. FHR claims to have met several times with Williams (and without him) to thoroughly understand the disability issues and find alternative employment. Ultimately, according to FHR, any breakdown in the process was due to Williams' failure to follow up. According to Williams, any meeting with FHR was

perfunctory, with minimal efforts that were clearly insufficient given the breadth of alternatives that FHR could have explored with Williams, particularly any openings that would have appeared on the Koch Industrial listings independent of the FHR listings. Williams also complains that FHR failed to return his calls when he tried to follow up.

For the Court's analysis, however, the bottom line involved in this dispute is a causal question: did any such failure to work together lead to a failure to accommodate Williams' disability-restricted employment opportunities? *Loulseged*, at 736. The answer is "no." Williams agreed that FHR did not have any job openings consistent with his qualifications and restrictions. Williams has supplied no evidence that rises above speculation that, for instance, had FHR looked into Koch Industries' job openings, there would have been positions Williams could fill. Neither has he addressed any particular accommodation that would enable him to perform essential functions of the job that he cannot perform due to his knee injury. *Diaz v. City of Philadelphia*, 2012 WL 1657866, 12 (E.D. Pa. 2012) (citing *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 285 n. 4 ($3^d$ Cir. 2001).

Without some evidence that a position was available or that a specific modification could accommodate his disability, Williams has failed to raise sufficient evidence of a disputed issue of material fact to support a claim of failure to reasonably accommodate his disability. FHR is entitled to summary judgment that Williams take nothing on his claim for failure to accommodate his disability.

### 2. Disability Discrimination.

The Fifth Circuit follows the *McDonnell Douglas*, Title VII burden-shifting analysis in cases such as this that depend upon circumstantial evidence:

> Under this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied*, 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). Once the plaintiff makes his prima facie showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. *See Daigle* [*v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)].

*McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000).

FHR first claims that Williams cannot show that he has suffered an adverse employment action. The Fifth Circuit has historically held that '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Under that standard, paid leave is not an "adverse employment action." *Id*. "[E]mployment actions are not adverse where pay, benefits, and level of responsibility remain the same." *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 522 (5th Cir. 2001).

Williams counters that he has been, essentially, constructively discharged because his pay and benefits have run out and he has no level of responsibility. It is true that leave without pay can constitute an adverse employment action. *See generally, Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73, 126 S.Ct. 2405, 2417 (2006). However, his unpaid medical leave can also be treated as an accommodation in itself, with his position held open in the event that he recovers and can return to work.

FHR claims to be entitled to judgment as a matter of law on this issue, citing *Shepard v. United Parcel Service, Inc.*, No. 11-11976, 2012 WL 833369, 2012 U.S. App. LEXIS 5339 (11th Cir. March 14, 2012). In that case, the court held that placing Shepard on unpaid medical leave was a reasonable response to his medical restrictions and thus was not an adverse employment action. The Court holds that the question whether unpaid medical leave is a "reasonable response to medical restrictions" or constructive discharge in this case remains a question of fact under the evidence. To hold otherwise could potentially immunize employers from ADA liability so long as they choose to consider the employee as being on indefinite leave (without pay or benefits) rather than as discharged.

Where Williams' disability discrimination claim fails is in his failure to show that "he was replaced by or treated less favorably than non-disabled employees." FHR has shown that Williams has not been replaced. Instead, his responsibilities have been shifted to other existing workers in Process Specialist positions. Neither has he shown that he has been treated less favorably than non-disabled employees. Williams has not

provided evidence of a single non-disabled comparator. According to the evidence, FHR has treated Williams exactly as his medical restrictions have required. FHR is entitled to summary judgment on Williams' disability discrimination claim.

### B. The Age Discrimination Claim.

Plaintiff concedes that he does not have sufficient evidence to support his age discrimination claim. Response (D.E. 22), p. 3. Thus FHR is entitled to summary judgment on that claim.

## CONCLUSION

For the reasons set out above, the Defendant's Motion for Summary Judgment (D.E. 19) is GRANTED and Defendant is entitled to a judgment that Plaintiff take nothing on his claims.

ORDERED this 18th day of June, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE